# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE CAYUGA NATION, *et al.*,
    Plaintiffs,

  v.

RYAN ZINKE, *et al.*,
    Defendants,

THE CAYUGA NATION COUNCIL,
    Defendant-Intervenor.

Civil Action No. 17-cv-1923 (CKK)

## MEMORANDUM OPINION
(February 23, 2018)

      The Cayuga Nation is a federally recognized Indian Nation. This case deals with decisions by the Bureau of Indian Affairs ("BIA") and the Assistant Secretary for Indian Affairs of the Department of the Interior that recognized one faction within the Cayuga Nation—now referring to itself as the "Cayuga Nation Council"—as the governing body of the Cayuga Nation for the purposes of certain contractual relationships between that Nation and the United States federal government. These decisions were apparently the product of an adversarial process between the Cayuga Nation Council and Plaintiffs, a rival faction within the Cayuga Nation who assert that they represent the Nation's rightful government. Plaintiffs have filed this lawsuit seeking to overturn the decisions.

      Presently before the Court is the [17] Motion of the Cayuga Nation Council to Intervene. Putative Intervenor Cayuga Nation Council ("Putative Intervenor") seeks to intervene in this case to defend the government's decisions recognizing it, as opposed to Plaintiffs, as the governing body of the Cayuga Nation. Current Defendants (effectively, the federal government) do not

oppose the Putative Intervenor's Motion, but Plaintiffs do. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that the Putative Intervenor has standing and is entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a). Accordingly, the Court shall GRANT its Motion to Intervene.

## I. BACKGROUND

The Cayuga Nation is a sovereign, federally recognized Indian Nation. Compl., ¶ 1. Plaintiffs allege that the Cayuga Nation has long been governed by a Council of Chiefs selected and overseen by "Clan Mothers," who Plaintiffs purport to represent in this litigation. *Id.* ¶¶ 1-2. Plaintiffs assert that "Cayuga Nation leaders are selected pursuant to the Great Law of Peace, which gives that responsibility of nomination and removal to the women who serve as Clan Mothers, based on input from the members of their clans." *Id.* ¶ 31. According to Plaintiffs, this is a "deliberative and consensus-based" process for selecting leaders. *Id.* ¶ 33. Plaintiffs allege that the United States federal government had previously recognized this form of governance for the Cayuga Nation, and rejected efforts over the years by a faction known as the "Halftown Group" to secure support for the use of a mail-in survey to reconfigure the Cayuga Nation's government. *Id.* ¶¶ 34-36.

However, in June 2016 Defendant Bruce W. Maytubby, the Eastern Regional Director of the BIA, revealed to Plaintiffs that the Halftown Group intended to conduct a mail-in survey in

---

[1] The Court's consideration has focused on the following documents:
- Points and Authorities in Support of Mot. of the Cayuga Nation Council to Intervene, ECF No. 17 ("Put. Int.'s Mot.");
- Pls.' Mem. in Opp'n to Mot. of the Cayuga Nation Council to Intervene ("Pls.' Opp'n"), ECF No. 20; and
- Reply to Pls.' Opp'n to Mot. of the Cayuga Nation Council to Intervene ("Put. Int.'s Reply"), ECF No. 24.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

order to create a new government for the Cayuga Nation, and that it was Mr. Maytubby's view that the proposed survey "would be a viable way of involving the Cayuga people in a determination of the form and membership of their government." *Id.* ¶¶ 37, 40. Plaintiffs contend that this determination was the result of secret meetings between the BIA and the Halftown Group, which Plaintiffs were excluded from. *Id.* ¶ 38. Plaintiffs objected to the proposed survey, arguing that, among other things, it violated Cayuga law. *Id.* ¶ 42.

On December 15, 2016, Defendant Maytubby issued a decision "(1) recognizing the Halftown Group as the government of the Cayuga Nation for purposes of entering into a contract under the ISDEAA [Indian Self-Determination and Education Assistance Act] and declining to recognize Plaintiffs for such purposes; (2) awarding an ISDEAA contract grant to the Halftown Group, on behalf of the Cayuga Nation; and (3) declining to award an ISDEAA contract to [Plaintiffs] on behalf of the Cayuga Nation" (the "Decision"). *Id.* ¶ 54. Plaintiffs characterize the Decision as a reversal of "longstanding federal policy," and challenge it on a number of substantive and procedural grounds. *Id.* ¶¶ 55-81.

Plaintiffs filed a notice of appeal with the Interior Board of Indian Appeals ("IBIA"), requesting that the Decision be vacated. *Id.* ¶¶ 82-83. The IBIA eventually transferred the appeal to Defendant Michael Black, the then-Acting Assistant Secretary for Indian Affairs, who issued a decision denying Plaintiffs' appeal. *Id.* ¶¶ 89, 95.

On September 20, 2017, Plaintiffs filed this lawsuit, claiming that the Decision, and the affirmance of the Decision, violated the Administrative Procedure Act ("APA") and Plaintiffs' constitutional right to due process. *Id.* ¶¶ 100-65. As relief, Plaintiffs seek that both decisions be declared unlawful and vacated, that the Court enjoin Defendants from relying on the vacated decisions for any action by the Department of the Interior, that the individuals involved in

3

rendering these decisions be enjoined from further adjudicating the questions in this case, that this matter be remanded to the BIA "for government to government consultation and, as appropriate, decision by a neutral decision-maker on recognition and the Plaintiffs' ISDEAA application," and that they be granted costs and attorneys' fees. *Id.* at 26-27.

## II. LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right. That provision provides, in relevant part, that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consistent with this language, the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has identified four requirements for intervention as a matter of right:

(1) **Timeliness:** First, an application to intervene in a pending action must be timely. *Karsner v. Lothian,* 532 F.3d 876, 885 (D.C. Cir. 2008). Whether a given application is timely is a context-specific inquiry, and courts should take into account (a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights. *Id.* at 886.

(2) **Interest:** Second, the putative intervenor must have a "legally protected" interest in the action. *Id.* at 885. The test operates in large part as a "practical guide," with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process. *United States v. Morten,* 730 F.Supp.2d 11, 16 (D.D.C. 2010).

(3) **Impairment of Interest:** Third, the action must threaten to impair the putative intervenor's proffered interest in the action. *Karsner,* 532 F.3d at 885. The inquiry is not a rigid one: consistent with the Rule's reference to dispositions that may "as a practical matter" impair the putative intervenor's interest, Fed. R. Civ. P. 24(a)(2), courts look to

4

the "practical consequences" of denying intervention, *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 735 (D.C. Cir. 2003) (citing *Natural Res. Def. Council v. Costle,* 561 F.2d 904, 909 (D.C. Cir. 1977)).

(4) **Adequacy of Representation:** Fourth, and finally, no existing party to the action may adequately represent the putative intervenor's interests. *Karsner,* 532 F.3d at 885. Significantly, the putative intervenor's burden here is *de minimis,* and extends only to showing that there is a possibility that its interests may not be adequately represented absent intervention. *Fund for Animals,* 322 F.3d at 735.

In addition to these four requirements, which emanate from the text of Rule 24(a) itself, a putative intervenor must further establish that it has standing under Article III of the Constitution. *Fund for Animals*, 322 F.3d at 731-32. Where a party seeks to intervene as a defendant in order to uphold or defend an agency action, it must establish: (a) that it would suffer a concrete injury-in-fact if the action were to be set aside, (b) that the injury would be fairly traceable to the setting aside of the agency action, and (c) that the alleged injury would be prevented if the agency action were to be upheld. *See Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001); *see also Friends of Animals v. Kempthorne,* 452 F. Supp. 2d 64, 68 (D.D.C. 2006) (identifying requirements for constitutional standing in an action involving an agency action).

## III. DISCUSSION

Putative Intervenor the Cayuga Nation Council has a right to intervene in this case. As explained in more detail below, Putative Intervenor has standing and satisfies the requirements for intervention as a matter of right under Rule 24(a)(2). The Court will, however, set certain conditions on the Cayuga Nation Council's participation in this litigation. Because the Putative Intervenor will be granted leave to intervene as a matter of right, the Court need not consider its alternative argument that it should be granted permissive intervention under Rule 24(b).

**A. Standing**

First, Putative Intervenor has established standing. In order "[t]o establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Where, as here, a party seeks to intervene as a defendant to uphold an action taken by the government, the party must establish that it will be "injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Am. Horse Prot. Assoc.,* 200 F.R.D. at 156; *see also Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (holding that an association of chemical manufacturers had standing to intervene as defendants in a case involving a challenge to an EPA regulation because intervenors "would suffer concrete injury if the court grants the relief the petitioners seek").

The government decisions challenged in this case were favorable to the Putative Intervenor because they recognized it as the Cayuga Nation's lawful governing body and awarded it a federal contract. The relief Plaintiffs seek—the vacating of those decisions—would clearly cause Putative Intervenor harm. It would undermine Putative Intervenor's current recognition as the government of the Cayuga Nation and their relationship with the federal government, and place at risk the Putative Intervenor's receipt of funds from federal contracts. Upholding the challenged decisions would prevent these harms. This is more than enough to establish standing for an intervenor. *See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015) ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged

in court, and an unfavorable decision would remove the party's benefit."); *California Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 46-47 (D.D.C. 2012) (in dispute over the Department of Interior's determination of the legitimate government of a federally-recognized Indian tribe, holding that proposed intervenors had standing because if the plaintiffs in the matter prevailed, government-to-government relations between the federal government and the putative intervenors would cease and the putative intervenors would stop receiving federal funds).

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs argue that the Putative Intervenor does not have a legally protected interest in this lawsuit because it has already received the funds from the ISDEAA contract granted to it as part of the Decision. *See* Pls.' Opp'n at 3. Although Plaintiffs challenge the legality of the decision to enter into that contract, they do not seek disgorgement of the funds Putative Intervenor has received from the contract. *Id.* Therefore, in Plaintiffs' view, the outcome of this case is of no consequence to the Putative Intervenor.

This argument lacks merit. As an initial matter, the factual premise of the argument—that the Putative Intervenor has already received the funds under the ISDEAA contract at issue—is disputed by the Putative Intervenor and appears to be contradicted by the actual contract. *See* Put. Int.'s Reply at 1-2. That contract indicates that it matures in September 2018, and that a balance of the total award to the Cayuga Nation still remains. See *id.*, Ex. A. Putative Intervenor would be injured if the Court vacated the Decision in this case because that would presumably prevent Putative Intervenor from receiving any additional funds from the contract.

Moreover, even if the Putative Intervenor had already received all of the funds from the challenged contract and Plaintiffs were not seeking the disgorgement of those funds, the Court is skeptical of Plaintiffs' claim that vacating the decisions at issue in this case would have

7

absolutely no negative impact on the Putative Intervenor. In large part, that skepticism is driven by statements Plaintiffs themselves have made in this case, which paint the challenged decisions as potentially having import beyond the single ISDEAA contract at issue. For example, in their Motion for Preliminary Injunction, Plaintiffs contend that the Decision could enable the Putative Intervenor to "assert exclusive access to federal and state funding, exclusive control over Nation resources and assets, and exclusive authority to speak for the Cayuga Nation regarding the Nation's government-to-government relationship with the United States." Pls.' Mem. in Support of Mot. for Preliminary Injunction, ECF No. 22, at 35. Plaintiffs also state that "[a]lthough the BIA decision properly applies only to a federal contract with that agency under the ISDEAA, the [Cayuga Nation Council] is wielding the decision to arrogate to itself exclusive authority to deal with all federal agencies on all matters, and thereby impair Plaintiffs' nation to nation relationship with the United States and cut off federal funding to the Plaintiffs." *Id.* at 33. Accepting Plaintiffs' representations that the Decision could—at least as a practical matter— have these effects, it appears to the Court that vacating that Decision would harm the Putative Intervenor. Indeed, given that Plaintiffs are not seeking disgorgement of the funds from the particular ISDEAA contract at issue, it would seem that stemming these secondary effects of the Decision is actually the primary goal of Plaintiffs' lawsuit.

In sum, the challenged decisions are favorable to the Putative Intervenor. Vacating them would injure the Putative Intervenor and upholding them would prevent that injury. Accordingly, the Putative Intervenor has standing.

**B. Requirements for Intervention as a Matter of Right**

Having found that the Putative Intervenor has standing to intervene, the Court must now determine whether it satisfies the four requirements for intervention as a matter of right: (1) its

8

application to intervene was timely; (2) it has a "legally protected" interest in this action; (3) this action threatens to impair that interest, and (4) no existing party to this action adequately represents its interests. *See Fund for Animals,* 322 F.3d at 735-37. The Court is satisfied that all of these requirements are met.

### 1. Timeliness

Plaintiffs do not challenge Putative Intervenor's motion as untimely, and for good reason. The motion was timely filed in the early stages of this case, on the same day Defendants were required to respond to Plaintiffs' Complaint. Defendants filed a partial motion to dismiss on that day, *see* ECF No. 16, but have yet to file an answer. *See Fund for Animals*, 322 F.3d at 735 (motion to intervene filed before defendants filed answer was timely). The parties are currently briefing Plaintiffs' Motion for Preliminary Injunction, which will in no way be delayed by the granting of Putative Intervenor's motion. The Court can conceive of no way in which the timing of this motion has prejudiced any of the current parties.

### 2. Legally Protected Interest

The Putative Intervenor also has a legally protected interest in this action. As described above, the Putative Intervenor has standing because it would sustain an "injury-in-fact" if the Court were to award the relief requested by Plaintiffs. *See supra*, Part III.A. For the same reasons that the Putative Intervenor has standing to intervene, it has a "legally protected" interest in this action. *See Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003) (holding that "because [the putative intervenor] has suffered a cognizable injury sufficient to establish Article III standing, she also has the requisite interest under Rule 24(a)(2)."); *Fund For Animals,* 322 F.3d at 735 ("Our conclusion that the [putative intervenor] has constitutional standing is alone sufficient to establish that [it] has 'an interest relating to the property or

transaction which is the subject of the action.'"); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("[The putative intervenor] need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a).").

### 3. Impairment of Interest

Next, the Court finds that this action threatens to impair the Putative Intervenor's interest. In determining whether an applicant's interests will be impaired, courts in this Circuit look to the "practical consequences" that the applicant may suffer if intervention is denied. *Natural Res. Def. Council*, 561 F.2d at 909; *see also Reporters LLC v. United States Dep't of Justice*, 307 F.R.D. 269, 278-79 (D.D.C. 2014); *Am. Horse Prot. Ass'n*, 200 F.R.D. at 158. Simply put, a decision in Plaintiffs' favor in this case would impair Putative Intervenor's interests because Plaintiffs are attacking a decision that was favorable to the Putative Intervenor both in terms of receiving federal funds and in terms of instilling its governance of the Cayuga Nation. *See California Valley*, 281 F.R.D. at 47 (holding that an action threatened to impair a putative intervenor's interest because "resolution of the matter in the plaintiffs' favor would directly interfere with the governance of the Tribe as currently recognized and preclude access to federal funds."); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010) (holding that an action threatened to impair a putative intervenor's interest because "[s]imply put, the Bureau's decision below was favorable to Antelope, and the present action is a direct attack on that decision.").

### 4. Adequacy of Representation

Finally, the Court finds that the current federal government Defendants do not adequately represent the Putative Intervenor's interest in this action. In assessing whether representation by

existing parties is adequate, the Supreme Court has held that this requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (burden is "not onerous"). As particularly relevant here, courts in this Circuit "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund For Animals*, 322 F.3d at 736.

The federal government Defendants may not adequately represent Putative Intervenor's interests in this action. The Putative Intervenor's interests are in defending what it views as the "tribal sovereignty of the Cayuga Nation," espousing what it views as the correct interpretation of Cayuga law, protecting its recognition as the governing body of the Cayuga Nation, and ensuring its continued access to federal monies. These are narrow, particular interests specific to the Cayuga Nation Council. Although the federal government has an interest in defending the decisions it has made that are challenged in this case, it does not share the particular, narrow interests of the Cayuga Nation Council that are listed above.[2] Instead, the federal government represents the public interest of its citizens as a whole, and would be "shirking its duty were it to

---

[2] Putative Intervenor claims that it has a particular interest in resolving this litigation quickly that the federal government might not share. *See* Put. Int.'s Mot. at 10. Plaintiffs argue that this claim is belied by the fact that the Putative Intervenor has attached to its Motion to Intervene various threshold dispositive motions that it would seek to file if granted leave to intervene, the resolution of which would necessarily slow this case. The Court's determination that the federal government's interests are distinct from the Putative Intervenor's interests such that the federal government would not adequately represent the Putative Intervenor does not depend on the Court finding that the federal government would not pursue an expeditious resolution of this lawsuit. Nonetheless, the Court notes that the Putative Intervenor agreed on a teleconference with the Court on February 12, 2018 to not file the motions attached to its Motion to Intervene. Instead, it will incorporate the arguments therein, as appropriate, into other pleadings, such as its response to Plaintiffs' Motion for a Preliminary Injunction or cross-motions for summary judgment.

advance [a] narrower interest at the expense of its representation of the general public interest." *Fund For Animals*, 322 F.3d at 737 (quoting *Dimond*, 792 F.2d at 192-93). Accordingly, the Court is not convinced that the federal government would adequately represent the particular interests of the Cayuga Nation Council in this case.

**C. Conditions Upon Intervention**

Even where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action. *Fund for Animals,* 322 F.3d at 737 n.11. The Court now considers what conditions, if any, to impose upon Putative Intervenor's participation.

The inquiry is necessarily context-specific, and the conditions should be tailored to fit the needs of the particular litigation, the parties, and the district court. In the past, courts have barred intervenors from injecting collateral issues into the litigation. *See, e.g., Brady Campaign to Prevent Gun Violence v. Salazar,* 612 F.Supp.2d 1, 11 n.8 (D.D.C. 2009) (granting intervention of right but prohibiting intervenors from raising new claims or collateral issues); *Cnty. of San Miguel, Colorado v. MacDonald,* 244 F.R.D. 36, 48 n.17 (D.D.C. 2007) (limiting intervention of right to claims within the scope of the complaint, but declining to impose other conditions). Other courts have required intervenors to consult with one another prior to filing papers with the Court and restricted their presentations to non-cumulative arguments. *See, e.g., Earthworks v. U.S. Dep't of Interior,* Civil Action 09-01972 (HHK), 2010 WL 3063143, at *2 (Aug. 3, 2010) (granting intervention as a matter of right but requiring consultation with federal defendants and restricting presentation to arguments not advanced by other parties). In the end, the primary limitation on the district court's discretion is that any conditions imposed should be designed to

ensure the fair, efficacious, and prompt resolution of the litigation. *See United States v. S. Florida Water Mgmt. Dist.,* 922 F.2d 704, 710 (11th Cir.) (district court may condition intervention "on such terms as will be consistent with the fair, prompt conduct of this litigation."), *cert. denied,* 502 U.S. 953 (1991). To achieve this salutary purpose, the district court should remain attuned to the two conflicting goals of intervention: *i.e.,* "to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending." *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C. Cir. 1969).

In order to ensure the fair and efficacious resolution of this action, the Court shall require Putative Intervenor the Cayuga Nation Council to comply with the following conditions:

- The intervening party shall meet and confer with current Defendants prior to the filing of any motion, responsive filing, or brief to determine whether its positions may be set forth in a consolidated fashion—separate filings by the intervening party shall include a certificate of compliance with this requirement and briefly describe the need for separate filings. The parties shall not file separate pleadings that repeat the same arguments;
- The intervening party shall confine its arguments to the existing claims in this action and shall not interject new claims or stray into collateral issues;
- The intervening party shall comply with each of the directives set forth in the [5] Order Establishing Procedures for Cases Assigned to Judge Colleen Kollar-Kotelly, issued on September 27, 2017.
- The intervening party shall adhere to the schedule and requirements set forth in the [25] Scheduling and Procedures Order, issued on February 12, 2018, including filing any responses to Plaintiffs' Motion for Preliminary Injunction and Motion to Supplement the Administrative Record on the same day as Defendants: February 26, 2018.

The Court finds that the foregoing conditions strike the appropriate balance between ensuring the expedient resolution of this action while preserving a space for the intervening party to articulate its positions and defend its interests.

**D. Permissive Intervention**

Because the Court concludes that the Putative Intervenor is entitled to intervene as a matter of right, it is unnecessary to determine whether the Putative Intervenor would be entitled to intervene by permission pursuant to Rule 24(b). *See Am. Horse Prot. Assoc.*, 200 F.R.D. at 156 (concluding that movant was entitled to intervene as of right and declining to reach question of permissive intervention).

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT the Motion of the Cayuga Nation Council to Intervene. As intervening party, the Cayuga Nation Council shall comply with the conditions set forth in this Memorandum Opinion. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE